# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GELSON LOPES BRANDAO, | : | CIVIL NO. 4:09-CV-1837 |
| | : | |
| Petitioner, | : | (Magistrate Judge Carlson) |
| | : | |
| v. | : | |
| | : | |
| DISTRICT DIRECTOR FOR | : | |
| IMMIGRATION AND CUSTOMS | : | |
| ENFORCEMENT, et al., | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM  OPINION AND ORDER

### I.      Statement of Facts and of the Case

### A.      Gelson Brandao's Criminal History

This case involves a habeas corpus petition filed by an immigration detainee and criminal recidivist, Gelson Brandao. The petitioner is a native and citizen of the Republic of Cape Verde. (Doc. 7, Immigrant Visa and Alien Registration, Ex. 1; Record of Deportable/Inadmissible Alien, Ex. 2.) He was admitted to the United States at New York, New York on or about August 23,1985, as a lawful permanent resident. (Doc. 7,  Ex. 2.) Brandao is also a convicted felon and drug trafficker, with

a criminal history of theft, robbery, drug and firearms offenses in the United States, which spans the past 14 years.

Brandao's extensive criminal history in this country began at age 16 in November, 1995, when he was arrested for stripping a motor vehicle and charged with receiving stolen property. (Doc. 7, Pre-sentence Report, Ex. 5, at 20.) Following this juvenile adjudication, Brandao then amassed seven additional criminal convictions in three different jurisdictions in the span of only seven years. Thus, in 1996 at age 17, Brandao was convicted of distribution of crack cocaine and illegal firearms possession in Dorchester, Massachusetts. (Id. at 21.) Three years later, in September of 1999, Brandao was convicted again in Massachusetts of another drug offense, marijuana distribution. (Id. at 21-22.) Undeterred by these law enforcement encounters, Brandao was then arrested and convicted in Massachusetts on three additional occasions between March and September 2001 for offenses ranging from possession of controlled substances to operating a motor vehicle without a license. (Id. at 23-4.)

On January 1, 2002, Brandao had yet another encounter with law enforcement when he was found to be in possession of a loaded handgun with an obliterated serial number during a 3:00 a.m. traffic stop in Brockton, Massachusetts. (Id. at 17.) Brandao's possession of this firearm at a time when he was a previously convicted felon and drug trafficker inspired the interest of federal law enforcement and Brandao

was indicted in the District of Massachusetts on federal firearms charges on November 13, 2002. (Id. at 16.)

At about the time of this federal indictment, Brandao left Massachusetts. By March 2003, Brandao, who was now 24 years old, had moved from Massachusetts to Miami, Florida where he was arrested, charged and convicted of strong-arm robbery and marijuana possession. (Id. at 24.) Following this Florida arrest and conviction Brandao was returned to Massachusetts where he faced his federal firearms charges. On March 2, 2005, Brandao was convicted in the United States District Court for the District of Massachusetts for the offense of possession of ammunition by a felon, in violation of 18 U.S.C § 922(g)(1), and was sentenced to a seventy-two month term of imprisonment. (Doc.7,Criminal Judgment, Ex. 4.)

## B.    Brandao's Removal Proceedings

As Brandao's federal prison term drew to a close, officials of the Bureau of Immigration and Customs Enforcement ("ICE") commenced removal proceedings against the petitioner. As part of these proceedings a Notice to Appear was served on Brandao on September 12, 2008. This Notice of Appear placed Brandao on notice that he was subject to removal from the United States on three separate grounds under the Immigration and Nationality Act. First, Brandao was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) as a result of his conviction of an aggravated felony,

specifically firearms offenses. In addition, Brandao was notified that he was also subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) because of his conviction for a separate and distinct aggravated felony under federal immigration law; namely, an offense relating to explosive materials. Finally, this notice advised Brandao that his removal from the United States was also sought under 8 U.S.C. § 1227(a)(2)( C ) as a result of his conviction for offenses involving the purchase, sale, exchange, ownership or carrying of a firearm or destructive device. (Doc.7, Ex. 2 at 7.)  As an aggravated felon who illegally possessed firearms, Brandao was also subject to the mandatory detention provisions of the immigration laws, see 8 U.S.C. § 1226(c)(1)(B), and was ordered detained pending completion of these removal proceedings.

While detained, Brandao elected to actively contest these removal proceedings, a decision which caused numerous delays in the removal hearings. Thus, at immigration hearings on October 23, 2008, and November 12, 2008, Brandao sought, and was granted, additional time to secure legal representation. (Doc. 7, Transcript of Hearing, Oct. 23, 2008, Ex. 6 at 57-60; Transcript of Hearing, Nov. 12, 2008, Ex. 7 at 61-63.) Following the two-month delay caused by Brandao's efforts to secure counsel, on January 21, 2009, Brandao's attorney moved to terminate these removal proceedings claiming that Brandao had derived United States citizenship through his mother. (Doc. 7, Transcript of Hearing, Jan. 21, 2009, Ex. 8 at 64-72.)

In order to fully protect Brandao's rights and address the issues raised by Brandao, the Immigration Judge held Brandao's motion in abeyance and directed Brandao to file Form N-600, an application for citizenship. (Id.) Approximately one month then elapsed until Brandao prepared and submitted this form on February 20, 2009. Immigration officials then promptly addressed this citizenship claim raised by Brandao. Indeed, within days of receipt of the application, on February 23, 2009, Field Office Director of U.S. Citizenship and Immigration Services ("USCIS") issued a Notice of Decision as to Brandao's Application for Certificate of Citizenship.(Doc. 7, Application for Certificate of Citizenship, Ex. 9 at 73-79; Notice of Decision, Ex. 10 at 80-82.) The Notice of Decision explained that Brandao's application was denied because, by virtue of Cape Verde's Decree Law No. 84/76 dictating that any child born in Cape Verde after October 1, 1976, is deemed to be the legitimate child of his natural father, Brandao was unable to derive citizenship through his mother. (Doc. 7, Notice of Decision, Ex. 10 at 80-82.)

Brandao then took a series of steps to contest this ruling, steps which have further delayed the resolution of these removal proceedings. At the outset, on February 25, 2009, Brandao's attorney requested that the Immigration Judge review the decision denying Brandao's application for citizenship. (Doc.7, Transcript of Hearing, Feb. 25, 2009, Ex. 11 at 83-95.). The Immigration Judge promptly considered Brandao's

request, denying Brandao's motion to terminate removal proceedings based on his claim of derived citizenship in an April 3, 2009 Interlocutory Ruling. (Doc. 7, Interlocutory Ruling on Motion, Ex. 12 at 96-98.) On April 8, 2009, the Immigration Judge also denied Brandao's request for a change in custody status and ordered him to be removed from the United States, paving the way for Brandao's removal from this country. (Doc.7, Order of the Immigration Judge with Respect to Custody, Ex. 13; Oral Decision of the Immigration Judge, Ex. 14; Transcript of Hearing, Apr. 8, 2009, Ex. 15).

Presented with a removal order Brandao once again chose to follow a litigative path which resulted in additional delay, when he appealed this decision to the Board of Immigration Appeals ("BIA"). On July 31, 2009, the BIA issued a decision dismissing Brandao's appeal, and agreeing that he may not derive citizenship through his mother. (Doc. 7, BIA Decision, Ex. 17 at 112-116.) Brandao then filed a Petition for Review of his removal proceedings before the United States Court of Appeals for the Third Circuit. (Doc. 7, Docket, Ex. 20 at 138-140.)

### D. Post-Final Order Detention and Removal Efforts

With the entry of a final removal order in this case, immigration officials moved forward promptly to effect Brandao's removal from the United States. Thus, on August 11, 2009, immigration officials requested a travel document from the

Consulate of Cape Verde on Brandao's behalf. (Doc. 7, Travel Document Request, Ex. 18 at 117-136.) At the same time immigration officials took steps to ensure that Brandao did not experience unnecessary detention and delay in his removal from the United States. As part of this effort, on August 14, 2009, a Notice to Alien of File Custody Review was issued and served on Brandao, advising him that if he was not already removed from the United States, his custody status would be reviewed on or about October 14, 2009. (Doc. 7, Notice to Alien of File Custody Review, Ex. 19). This notice expressly alerted Brandao to his due process rights as a criminal alien awaiting removal, and explained that his continued detention or release would be dependent on him demonstrating to the Department of Homeland Security that he "will not pose a danger to the community and will not present a flight risk." (Id.) Brandao was also advised that he may submit "any documentation [he] wish[es] to be reviewed in support of [his] release." (Id.)

### E.    Brandao's Habeas Petition

Displeased by the fact of this continuing detention, Brandao filed this *pro se* motion for a writ of habeas corpus on September 23, 2009. (Doc. 1.) Characterizing this case as one which only involves pre-removal detention of an alien, this petition challenges the ability of immigration officials to continue to hold Brandao while he

completes the litigation of this removal case. The Government has filed a response to this petition (Doc. 7), and this matter is now ripe for resolution.

We believe that Brando's detention prior to the entry of a removal order, and his current detention pending implementation of that removal order, are governed by different statutory and constitutional standards. Yet, while the legal standards governing these two detention periods differ, the application of these differing legal benchmarks to Brandao's case leads to the same result with respect to both periods of detention experienced by the petitioner in these proceedings. Because the periods of detention experienced by Brandao during his removal proceeding, and now following the entry of his removal order, are expressly required by statute and do not offend constitutional due process principles, we will deny Brandao's petition at this time without prejudice to renewal of this claim at an appropriate future time. We will, however, also take affirmative steps to fulfill our constitutional duty to ensure the timely resolution of these removal proceedings, by directing the United States to provide the Court with a status report regarding these efforts.

## II.    Discussion

### A.    Introduction

In this petition, Gelson Brandao, a citizen of Cape Verde, a convicted drug trafficker, and a criminal recidivist, seeks to challenge his detention by immigration

officials as excessive and unreasonable. While the precise tenor of Brandao's complaint is not entirely clear, it appears that the petitioner believes that this case solely involves pre-removal detention under the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B); and that his continued detention offends constitutional due process considerations.

We view Brandao's petition in a fashion that is more legally complex, subtle and nuanced. First, we disagree with the legal issues in this case, as presented by Brandao. In our view Brandao errs both when he suggests that this case is simply about excessive pre-removal detention and when he asserts that he remains subject to on-going pre-removal immigration detention. Quite the contrary, the period of Brandao's pre-removal detention came to an end in July 2009 with the entry of an administratively final removal order in this case. Brandao simply does not appear to be subject to pre-removal detention at this time.[1]

Rather, with the entry of a final order of removal against Brandao, we believe that this case implicates two different, but important, sets of statutory safeguards and

---

[1]Indeed, since Brandao is no longer subject to pre-removal detention it may well be that, to the extent that he argues issues of pre-removal detention, his petition is now moot since his custody status has changed. Nonetheless, out of an abundance of caution, and in order to fairly examine all aspects of Brandao's immigration custody, we will consider the merits of his pre-removal detention claims and ascertain whether that period of removal, which has now ended, raises any on-going due process concerns.

constitutional protections. First, we must determine whether the duration of Brandao's initial detention pending the entry of a final removal order offended due process in a way that now colors the legitimacy of his current post-removal detention. In addition, now that a final removal order had been entered in this case, we must also assess whether the continued detention of Brandao following the entry of this removal order violates a different, and more stringent, set of statutory and constitutional constraints.

## B. Brandao's Detention Pending Entry of A Removal Order Was Compelled By Statute and Did Not Violate Due Process

At the outset, we will examine the period of pre-removal detention experienced by Brandao, carefully scrutinizing that period of detention to ensure both that it was legally appropriate, and that it was not so excessive as to violate Brandao's due process rights.

In assessing this initial detention period, we begin by noting two things: First, Brandao's pre-removal detention has now ended since he is subject to an administratively final removal order at this time. Therefore, his complaints regarding this period of detention are in some respects moot. Second, to the extent that Brandao complains about the duration of this pre-removal detention period, Brandao's detention was specifically compelled by statute. Section 1226 of Title, 8, United

States Code, directs the Attorney General to detain criminal aliens like Brandao

pending removal, stating in clear and precise terms as follows:

> ( c ) Detention of Criminal Aliens--
>
> (1) Custody.--The Attorney General <u>shall</u> take
> into custody any alien who.--
> . . .
> (B) is deportable by reason of having
> committed any offense covered in section
> 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D).

8 U.S.C. § 1226(c)(1)(B)(emphasis added).

In enacting this mandatory detention requirement for a sub-class of criminal

aliens awaiting removal from the United States, Congress was responding to specific,

compelling immigration concerns caused by the failure to timely deport aliens who

had used the liberties conferred by this nation as a license to commit crimes. As the

Supreme Court has noted:

> Congress adopted this provision against a backdrop of wholesale failure
> by the INS to deal with increasing rates of criminal activity by aliens.
> See, *e.g.,* Criminal Aliens in the United States: Hearings before the
> Permanent Subcommittee on Investigations of the Senate Committee on
> Governmental Affairs, 103d Cong., 1st Sess. (1993); S.Rep. No. 104-48,
> p. 1 (1995) (hereinafter S. Rep. 104-48) (confinement of criminal aliens
> alone cost $724 million in 1990). Criminal aliens were the fastest
> growing segment of the federal prison population, already constituting
> roughly 25% of all federal prisoners, and they formed a rapidly rising
> share of state prison populations as well. <u>Id</u>*.,* at 6-9. Congress'
> investigations showed, however, that the INS could not even *identify*

most deportable aliens, much less locate them and remove them from the country. Id., at 1. One study showed that, at the then-current rate of deportation, it would take 23 years to remove every criminal alien already subject to deportation. Id., at 5. Making matters worse, criminal aliens who were deported swiftly reentered the country illegally in great numbers. Id., at 3.The INS' near-total inability to remove deportable criminal aliens imposed more than a monetary cost on the Nation. First, as Congress explained, "[a]liens who enter or remain in the United States in violation of our law are effectively taking immigration opportunities that might otherwise be extended to others." S.Rep. No. 104-249, p. 7 (1996). Second, deportable criminal aliens who remained in the United States often committed more crimes before being removed.

Demore v. Kim, 538 U.S. 510, 518 (2003).

Recognizing these concerns, Congress mandated the detention of all criminal aliens, like Brandao, who are convicted of aggravated firearms felonies pending completion of removal hearings. In this case, there can be no doubt that Brandao falls within the narrow class of criminal aliens who fall within the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B). Brandao's prior convictions bring him within the ambit of this statute both as an aggravated felon, and as a person previously convicted of serious firearms offenses. Therefore, by statute, he was subject to mandatory detention pending the entry of a removal order in these proceedings.

Having determined as a matter of statutory construction that Brandao was legally subject to this mandatory detention, we further conclude that Brandao cannot sustain a constitutional due process challenge to this mandatory detention on the facts

of this case. At the outset, to the extent that Brandao seeks to challenge the fact of his detention on due process grounds, that avenue of attack is now foreclosed by the United States Supreme Court's decision in <u>Demore v. Kim</u>, 538 U.S. 510 (2003). In <u>Demore</u>, the Court addressed the issue of whether §1226 (c)(1)(B)'s mandatory detention provision violates due process. In terms that are equally applicable here, the Court held that Congress acted within its broad authority to regulate immigration matters when it imposed mandatory detention on this narrow group of criminal aliens facing removal from the United States. As the Court observed:

> In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." <u>Mathews v. Diaz</u>, 426 U.S. 67, 79-80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) . . . . And, since <u>Mathews</u>, this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens. <u>See</u>, <u>e.g.</u>, <u>Zadvydas</u>, 533 U.S., at 718, 121 S.Ct. 2491 (KENNEDY, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens"); <u>Reno v. Flores</u>, 507 U.S. 292, 305-306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("Thus, 'in the exercise of its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens" ' ") (quoting <u>Fiallo v. Bell</u>, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), in turn quoting <u>Mathews</u>, <u>supra</u>, at 79-80, 96 S.Ct. 1883)); <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259 (1990).

<u>Demore,</u> 538 U.S. at 521-522.

Acknowledging the authority of Congress in this field, the Court then held that: "Detention during removal proceedings is a constitutionally permissible part of that process." Demore, 538 U.S. at 531 (citations omitted). Yet, while reaching the conclusion that mandatory detention of certain criminal aliens did not violate due process, the Court emphasized the very brief duration of most removal proceedings which rarely exceeded five months, id. at 530, and noted that the six-month delay experienced by the alien in that case was a product of his own actions which delayed the entry of a final removal order. Id. at 531, n. 15. Given the fixed and finite term of any pre-removal detention, the Court held that the fact of this mandatory detention did not violate due process.

Following Demore courts have frequently rebuffed efforts by criminal aliens to broadly challenge their detention pending removal. See, e.g.,Tavares v. Attorney General, 211 F. App'x 127 (3d Cir. 2007); Slebo v. District Director, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009)(Munley, J.); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263(M.D. Pa. Jan. 9, 2007)(Conner, J.). Yet these decisions rejecting broad due process challenges to pre-removal detention of criminal aliens do not wholly resolve this petition. In our

view, consideration of the holding in Demore constitutes only the first part of our responsibility and analysis when reviewing claims like those presented by Brandao.

Demore holds that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal. Thus, while Demore addressed the due process issues that arise from the fact that, for certain criminal aliens, detention pending removal is mandatory, courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004);Prince v. Mukasey, 593 F. Supp.2d 727 (M.D. Pa. 2008); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009).

While the contours of this constitutional protection against excessive detention pending removal hearings are still developing, several key benchmarks have emerged. First, in assessing these claims, we must look to the duration of the detention. Thus, in general, periods of detention which exceed one year may trigger substantial constitutional concerns, see, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005)(2 years 8 months); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004)(500 days); Prince v.

Mukasey, 593 F. Supp.2d 727 (M.D. Pa. 2008)(16 months); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009)(9 and 20 months); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(2 years), while pre-removal detentions spanning a shorter period of months present less substantial constitutional issues. See e.g., Demore, 538 U.S. at 531(6 months); Slebo v. District Director, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009)(Munley, J.)(8 months); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.)(18 months); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263 (M.D. Pa. Jan. 9, 2007)(Conner, J.)(7 months).

Moreover, in weighing claims of excessive delay made by immigration detainees challenging mandatory pre-removal detention, courts must also carefully assess the reasons for the delay. Where the delay is attributable to actions taken by the alien in the course of litigating the removal proceedings, courts typically will not hold the government accountable for that delay when conducting a due process analysis. See, e.g., Demore, 538 U.S. at 531, n.15; Castellanos v. Holder, No. 08-4665, 2009 WL 2138408, at 5 (3d Cir. 2009); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

Finally, any consideration of an excessive delay claim brought by a criminal alien who is pending removal from the United States should take into account the fact that, upon entry of a final removal order, different statutory and due process protections come into play, protections designed to ensure that aliens who have been ordered removed are not held in custody for an unreasonable period of time. Thus, once a final order of removal is entered, the due process protections afforded to aliens by Zadvydas v. Davis, 533 U.S. 678 (2001) apply. See Matthias v. Hogan, No. 07-1987, 2008 WL 913522 (M.D. Pa. March 31, 2008). Under Zadvydas aliens subject to such final removal orders typically must either be removed, or be given bail consideration, within six months. The availability of this relief from excessive detention following the entry of a final removal order, coupled with what is frequently the brief duration of removal proceedings, greatly reduces any due process concerns resulting from the duration of the mandatory detention of aliens pending the completion of removal proceedings.

In this case, our review of these fundamental due process considerations leads us to conclude that the pre-removal delay experienced by Brandao did not offend due process. With the entry of an administratively final removal order that period of pre-removal detention has ended. Therefore, Brandao's complaints regarding this particular period of delay may now be moot. In any event, we note that Brandao

appeared to be precisely the type of criminal alien that Congress had in mind when it enacted this pre-removal detention provision into law: a criminal recidivist, with a lengthy history of theft, robbery, drug and firearms offenses in the United States which spans the past 14 years. See Demore, 538 U.S. at 518.

Moreover, an assessment of the factors which govern our due process analysis of Brandao's pre-removal detention militates heavily against Brandao. At the outset, the duration of this detention pending removal was relatively brief. Less than seven months elapsed between Brandao's initial detention and the entry of a removal order by an Immigration Judge, and only approximately 10 months passed before that order was affirmed by the Board of Immigration Appeals and became administratively final. Thus, in terms of the duration of this detention, this case falls squarely within that range of cases where detention for a period of months has not inspired constitutional concerns. See, e.g., Demore, 538 U.S. at 531(6 months); Slebo v. District Director, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009)(Munley, J.)(8 months);Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.)(18 months); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263 (M.D. Pa. Jan. 9, 2007)(Conner, J.)(7 months).

Furthermore, the pre-removal detention in this case was almost entirely attributable to litigation decisions made by Brandao, who sought two continuances which delayed his proceedings for several months and engaged in continuous litigation of a citizenship claim since January 2009, litigation that accounts for the balance of the delays in this case. Despite these delays, the Government acted with dispatch, entering an order of removal in this case by April 2009, less than seven months after Brandao first came into immigration custody. Since April 2009, the delay in this matter has been wholly attributable to Brandao, who unsuccessfully appealed this removal order to the BIA and is now seeking appellate review of this decision in the United States Court of Appeals for the Third Circuit. In sum, this is a case where any continuing delay and detention are a product of choices made by the petitioner, rather than inaction by the Government. In such instances, the courts generally decline to consider due process claims by detained criminal aliens. See, e.g., Demore, 538 U.S. at 531, n.15; Castellanos v. Holder, No. 08-4665, 2009 WL 2138408, at 5 (3d Cir. 2009); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

Finally, this is a case in which the period of detention pending the entry of a removal order had a fixed and finite duration. Indeed, that period of pre-removal detention has concluded, since a removal order has been entered for Brandao, and affirmed by the BIA. Moreover, immigration officials are actively taking steps to

implement this order, subject only to the appellate review of the order by the United States Court of Appeals for the Third Circuit, which has not chosen to stay Brandao's removal. The resolution of that appeal, therefore, will not delay removal and should conclude this action. If Brandao succeeds in his appeal, his custody will end. If he does not prevail, his removal order remains final, and he will be removed. In either event Brandao's right to avoid excessive detention pending entry of a removal order has already been fully vindicated.

## C. Brandao's Post-Removal Detention Does Not Yet Raise Constitutional Concerns

In this case Brandao's order of removal became administratively final in July of 2009 when that order was affirmed by the Board of Immigration Appeals. As an alien under an administratively final order of removal, Brandao's detention is now governed by a different, and in some ways more rigorous, set of statutory and constitutional rules.

First, by statute, aliens like Brandao, who are subject to final removal orders, may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The statute then commands that "[d]uring the removal period the

Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal recidivist aliens like Brandao specifically provides that: "Under no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final; that is, the date of the BIA decision affirming the removal order, in this case July 31, 2009.[2] See 8 U.S.C. § 1231(a)(1)(B)(I).

In this case, Brandao has been held for approximately 90 days since his removal order became administratively final on July 31, 2009. Therefore, the government's action to date in continuing to detain Brandao is not only authorized by law, it is actually compelled by the statute. 8 U.S.C. § 1231(a)(2). Accordingly, Brandao cannot challenge this post-removal detention on statutory grounds.

Nor does this current, brief term of post-removal detention violate Brandao's constitutional rights. For aliens awaiting removal, like Brandao, the contours of those

---

[2] We recognize, of course, that Brandao has filed a Petition for Review before the United States Court of Appeals for the Third Circuit. However, that court has not issued a stay of removal pending its decision, and therefore, Brandao's detention continues to be governed by 8 U.S.C. § 1231(a).

rights are now defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). In Zadvydas, the United States Supreme Court extended due process protections to aliens awaiting removal from the united States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A). Beyond this initial 90 day period the Court concluded that: "we think it practically necessary to recognize some presumptively reasonable period of detention." Id. at 701.

The Court then observed that:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months, at which time aliens subject to final removal orders must either be removed, or be given bail consideration.

While this legal framework affords substantial protections to aliens, like Brandao, who are subject to final removal orders, application of these legal standards to Brandao's case provides no grounds for affording habeas relief to the petitioner at this time. Brandao's removal order became final on July 31, 2009. Therefore, he has largely been subject to the first 90-day mandatory detention period set by statute, 8 U.S.C. § 1231(a)(2), and his post-removal detention falls well below the 6-month presumptively reasonable time frame defined by the Supreme Court in Zadvydas.

Moreover, it appears that immigration officials have already begun the process of affording Brandao a custody review, advising him that if he is not removed from the United States, his custody status would be reviewed on or about October 2009. (Doc. 7, Notice to Alien of File Custody Review, Ex. 19). As part of this process

23

immigration officials have alerted Brandao to his due process rights as a criminal alien awaiting removal, and have explained that his release would be dependent upon a showing that he "will not pose a danger to the community and will not present a flight risk." (Id.)

On these facts we find that Brandao simply has not made a valid claim that he has been subjected to an unconstitutionally excessive period of post-removal delay. Indeed, far from being unconstitutionally excessive, the current post-removal detention falls within periods sanctioned by statute and by the Supreme Court. Therefore, this brief detention does not raise concerns of constitutional dimension warranting habeas relief at this time. See Hendricks v. Reno, 221 F. App'x 131 (3d Cir. 2007)(affirming denial of habeas petition where court found delay from date of administratively final deportation order was less than 3 months).

While this petition lacks merit at the present time, we recognize that the courts have an ongoing obligation to avoid excessive delay in these cases. In the past, the courts have used various means to ensure that immigration detainees have their removal claims reviewed promptly. See, e.g., Prince v. Mukasey, 593 F. Supp.2d 727 (M.D. Pa. 2008)(16 months detention, agency instructed to review case); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(two years detention, court schedules hearing to review case). While we are confident that

Brandao's case has a fixed, finite duration, in order to fulfill our due process responsibilities we will instruct the United States to report to the court on or before January 31, 2010, six months from the date on which Brandao's removal order first became administratively final, regarding the progress of these removal proceedings.

III.    <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, **IT IS ORDERED** that the Petition be **DENIED** without prejudice to renewal at such time, if any, as the delay and detention become unreasonable and excessive . **IT IS FURTHER ORDERED** that the United States report to the court on or before January 31, 2010 on the progress of these removal proceedings. Finally **IT IS ORDERED** that a certificate of appealability should not be issued in this case.

**SO ORDERED**  this 3d day of November 2009.


*S/Martin C. Carlson*_____
**United States Magistrate Judge**